**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff-Appellant,<br><br>v.<br><br>JARED POLIS,<br>COLORADO GENERAL ASSEMBLY<br>PHILIP WEISER,<br>CITY AND COUNTY OF DENVER,<br>DENVER CITY COUNCIL,<br>MIKE JOHNSTON,<br>DENVER SHIERIFF DEPARTMENT,<br>ELIAS DIGGINS,<br>Defendants-Appellees. | No. 26-1214<br><br>(D.C. No. 1:25-cv-1391-GPG-KAS)<br><br>Hon. Gordon P. Gallagher |

---

**DENVER APPELLEES' RESPONSE BRIEF**

---

*Oral Argument Requested*

Ashley Kelliher, Assistant City Attorney – Director of Civil Litigation
Sophia Fernald, Assistant City Attorney
Andres Alers, Assistant City Attorney
Denver City Attorney's Office
201 West Colfax Ave., Dep't 1108
Denver, CO 80202-5332
Telephone: (720) 913-3100

**TABLE OF CONTENTS**

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... iv

STATEMENT OF RELATED CASES .......... 1

GLOSSARY .......... 1

INTRODUCTION .......... 1

STATEMENT OF THE ISSUE .......... 1

STATEMENT OF THE CASE .......... 3

I. The immigration and nationality act does not force state or local governments to follow federal government commands on immigration enforcement. .......... 3

II. Denver adopted the ordinance to ensure efficient and judicious use of city resources. .......... 3

III. Plaintff seeks to conscript Denver into helping the current federal administration achieve its political objectives for civil immigration enforcement. .......... 6

SUMMARY OF THE ARGUMENT .......... 10

ARGUMENT .......... 12

I. Because the federal government cannot force cities to carry out federal programs, the District court correctly determined that a ruling for Plaintiff would violate the Tenth Amendment .......... 12

A. Invalidating the Ordinance would effectively compel Denver to enforce federal immigration. .......................................... 13

B. The Ordinance doesn't obstruct federal immigration enforcement. ........................................................................... 13

C. Invalidating the Ordinance would compel Denver to do more than simply share information with the federal government. ............................................................................ 15

II. Because the laws in *Illinois* and *New York* prohibit local governments from assisting with immigration enforcement by sharing information, executing contracts, or accepting administrative warrants and immigration detainers—just like the Ordinance—the analyses in those cases apply here. ...................... 24

III. The INA does not preempt the Ordinance because the provisions relevant here don't regulate private actors, it's possible to comply with both the Ordinance and the INA, and the Ordinance doesn't frustrate the INA's purpose. ............................ 24

A. Because it's possible to comply with both federal and local law and the Ordinance does not frustrate the INA's purpose, it is not conflict preempted ................................................. 27

1. Because the Ordinance requires Denver to comply with federal law, it is possible to comply with both it and the INA. ......................................................................... 29

2. Because the Ordinance is not an obstacle to the INA's objectives, it is not conflict preempted. ....................................... 29

B. Because 8 U.S.C. §§ 1373(a) and 1644 don't regulate private

actors and interpreting them otherwise would violate the Tenth Amendment, they do not expressly preempt the Ordinance. ....................................................................................30

IV. Because the Ordinance does not discriminate against or regulate the federal government, Plaintiff's intergovernmental immunity claims lack merit....................................................................33

A. Because the Ordinance applies only to Denver and does not treat Plaintiff worse than others, it does not discriminate against the federal government. ..................................36

B. Because Plaintiff does not argue Denver unlawfully regulates it, the argument is waived. Even so, the Court should affirm because the Ordinance regulates Denver, not the federal government. .................................................................38

V. If the Court does not affirm, it should remand because Plaintiff does not explain why it should prevail on the merits...........................38

CONCLUSION ....................................................................................................40

COMPLIANCE CERTIFICATE...........................................................................42

PRIVACY AND DIGITAL SUBMISSION CERTIFICATE...............................43

CERTIFICATE OF SERVICE.......... **ERROR! BOOKMARK NOT DEFINED.**

## TABLE OF AUTHORITIES

### Cases

*Arizona v. United States*,
567 U.S. 387 (2012) .......... 28, 35
*Choate v. Champion Home Builders Co.*,
222 F.3d 788 (10th Cir. 2000) .......... 20
*City of New York. v. Dep't of Just.*,
343 F. Supp. 3d 213 (S.D.N.Y. 2018) .......... 22
*City of Philadelphia v. Sessions*,
309 F. Supp. 3d 289 (E.D. Pa. 2018) .......... 22
*County of Ocean*,
475 F. Supp. 3d 355 (D.N.J. 2020) .......... 21
*Colorado v. U. S. Dep't of Just.*,
455 F. Supp. 3d 1034 (D. Colo. 2020) .......... 21
*Fla. Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963) .......... 28, 29
*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88 (1992) .......... 28
*Hines v. Davidowitz*,
312 U.S. 52 (1941) .......... 28, 29
*Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*,
452 U.S. 264 (1981) .......... 16
*Kansas v. Garcia*,
589 U.S. 191 (2020) .......... 3
*McHenry Counnty v. Kwame Raoul*,
44 F.4th 581 (7th Cir. 2022) .......... 36, 37, 38, 39
*Murphy v. Nat'l Collegiate Athletic Ass'n*,
584 U.S. 453 (2018) .......... 13, 15, 16, 18, 21, 28, 30, 33, 34

*N. Mill St., LLC v. City of Aspen*,
6 F.4th 1216 (10th Cir. 2021) ....................................................................6
*New York v. U.S Dep't Just.*
951 F.3d 84 (2d Cir. 2020)........................................................................ 21, 22
*New York v. United States*,
505 U.S. 144 (1992) ................................................................................. 14, 15
*Oregon v. Trump*,
406 F. Supp. 3d 940 (D. Or. 2019)................................................................22
*Peoples v. Long*,
No. 1:20-cv-02116-RBJ-NYW, 2020 WL 9076288 (D. Colo. Dec. 16, 2020) ......7
*Printz v. United States*,
521 U.S. 898 (1997) ........................................................................... 13, 14, 23
*Reno v. Condon*
528 U.S. 141 (2000) .........................................................................................17
*Texas v. U.S. Dep't of Homeland Sec.*,
123 F.4th 186 (5th Cir. 2024) .........................................................................38
*Tran v. Trs. of State Colls. in Colo.*,
355 F.3d 1263 (10th Cir. 2004)................................................................ 32, 38
*United States v. City of Arcata*,
629 F.3d 986 (9th Cir. 2010)...........................................................................38
*United States v. Costello*,
666 F.3d 1040, 1047 (7th Cir. 2012) ................................................................26
*United States v. Herrera*,
584 F.2d 1137 (2d Cir. 1978)...........................................................................27
*United States v. Illinois*,
796 F. Supp. 3d 494 (N.D. Ill. 2025) ...........11, 12, 16, 20, 21, 24, 25, 30-37, 39
*United States v. New Jersey*,
No. 20-cv-01364-FLW-TJB, 2021 WL 252270 (D.N.J. Jan. 26, 2021).............39
*United States v. New York*,

810 F. Supp 3d 329 (N.D.N.Y. 2025) .......................... 11, 12, 24, 32, 35, 37, 39
*United States v. Vargas-Cordon,*
733 F.3d 366 (2d Cir. 2013)........................................................................ 26, 27
*United States v. Washington,*
596 U.S. 832 (2022) ........................................................................................36

**United States Code**

8 U.S.C. § 1103..................................................................................................4
8 U.S.C. § 1226................................................................................................30
8 U.S.C. § 1231................................................................................................30
8 U.S.C. § 1324........................................................................................ 19, 26
8 U.S.C. § 1357..................................................................................................4
8 U.S.C. § 1373........................................................................................ 20, 33
8 U.S.C. § 1644........................................................................................ 20, 33

**United States Regulation**

8 C.F.R. 287.7 ..............................................................................................5, 30

**Denver Code**

D.R.M.C. § 28-250 ............................................................ 16, 24, 29, 34, 37
D.R.M.C. § 28-251 ............................................................................................34
D.R.M.C. § 28-252 ........................................................................... 16, 24, 29
D.R.M.C. § 28-253 ........................................................................... 18, 19, 25

**Executive Order**

Exec. Order 142-18.0 .......................................................................................16

## STATEMENT OF RELATED CASES

There are no prior or related appeals.

## GLOSSARY

| | |
|---|---|
| ICE | Immigration and Customs Enforcement |
| INA | Immigration and Nationality Act |

## INTRODUCTION

Plaintiff-Appellant United States of America has initiated a nationwide campaign to pull cities and states like Denver and Colorado into its immigration enforcement program. Denver, like other cities, has laws that prevent its employees from working for U.S. Immigration and Customs Enforcement (ICE).

Plaintiff contends Denver's laws undermine intergovernmental immunity and are preempted by the Immigration and Nationality Act (INA). The district court—along with every other court to analyze the issue—rejected Plaintiff's arguments. It held a ruling for Plaintiff would undermine the Tenth Amendment as it would "force Colorado and Denver to bear the

cost of enforcing the federal immigration scheme and remove their authority to determine the proper allocation of state resources."

The federal government cannot force state and local governments to participate in federal programs. That is a fundamental pillar in the Constitution. Yet under the guise of cooperative federalism, Plaintiff seeks to topple that pillar and make state and local employees enforce federal immigration law.

Aside from seeking to conscript Denver employees, Plaintiff has launched identical attacks against Chicago, New York City, Los Angeles, Newark, Jersey City, Paterson, Hoboken, and Rochester. Those attacks have been swiftly rejected. Recognizing Plaintiff's request would violate the Tenth Amendment, the district court—and the five other courts who have analyzed the issue—dismissed Plaintiff's complaint.

Because the INA leaves it up to cities and states whether they'd like to cooperate with the federal government on immigration enforcement, Plaintiff's arguments to the contrary are rebuffed by the INA's text. And even

if the INA required state and local governments to forfeit autonomy, that mandate would violate the Tenth Amendment.

## STATEMENT OF THE ISSUE

Denver's ordinance says it won't use City resources to help Plaintiff enforce the INA. It is settled law that the federal government cannot force state and local governments to implement federal programs. Even so, Plaintiff argues Denver is required to assist the federal government with immigration enforcement. Is Plaintiff right?

## STATEMENT OF THE CASE

### I. The Immigration and Nationality Act does not force state or local government to follow federal government commands on immigration enforcement.

Plaintiff suggests the INA requires Defendants follow Plaintiff's commands to enforce immigration law. It does not. For context, the INA "sets out the 'terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the county." *Kansas v. Garcia*, 589 U.S. 191, 196 (2020) (citation omitted). Its relevant provisions fall under two broad categories: (1) provisions that allow state and local governments to

cooperate with the federal government if they volunteer to do so, and (2) provisions about immigration detainers and administrative warrants.

For the first category, relevant here, The INA does not compel state and local governments to cooperate with federal government on immigration enforcement. For instance, it says the Attorney General may enter into written agreements with local governments that allow local law enforcement officers to carry out certain "function[s] of an immigration officer," such as investigating, apprehending, or detaining "aliens in the United States." 8 U.S.C. § 1357(g)(1).

These agreements are permissible "to the extent consistent with State and local law," and entirely voluntary. *Id.* "Nothing in this [provision]," the INA explains, "shall be construed to require any State or political subdivision of a State to enter into an Agreement with the Attorney General." 8 U.S.C. § 1357(g)(9). Likewise, the Attorney General is authorized to execute "a cooperative agreement" with local governments for immigration detention. 8 U.S.C § 1103(a)(11)(B). These contracts are also

voluntary and apply only to local governments "which agree[]" to assist these federal civil immigration enforcement aims. *Id.*

The second category sets forth provisions about immigration detainers and administrative warrants. An immigration detainer "advise[s] another law enforcement agency that the [Department of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. 287.7(a). Thus, it operates as a *request* for the agency to "advise the Department, prior to the release of the alien" so the federal government can "arrange to assume custody." *Id.* Because immigration detainers are merely requests from the federal government, the INA does not require local governments to cooperate with them. They are requests, not commands.

As for administrative warrants, they provide federal immigration officers the authority to arrest and detain an individual pending a decision on whether the person will be removed from the United States. *See id.* Unlike a judicial warrant, an administrative warrant is not a criminal warrant signed by an Article III or magistrate judge. *See id.*

They are civil immigration documents, and any actions taken under these documents represent only federal *civil* immigration enforcement activities. As explained below, *see infra*, Section I.B, the INA does not require local governments to take any action with respect to immigration detainers or administrative warrants.

## II. Denver adopted the Ordinance to ensure efficient and judicious use of City resources.

In 2017, Denver enacted the Public Safety Enforcement Priorities Act (Denver Ordinance 940-17), which it codified as Denver Revised Municipal Code (D.R.M.C.) sections 28-250 through 28-253. *See* Suppl. App. at 1–3. (Ordinance).[1]

The Ordinance's preamble illuminates Denver's five aims for enacting this law. First, Denver sought to promote a welcoming environment for all its residents, including tens of thousands of undocumented immigrants who

---

[1] The Court can take judicial notice of municipal ordinances. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1221 n.3 (10th Cir. 2021) (citing Fed. R. Evid. 201). The codified version of the Ordinance can be found at https://library.municode.com/co/denver/codes/code_of_ordinances?nodeId=TITIIREMUCO_CH28HURI_ARTVIIIPUSAENPRAC.

contribute to Denver's economy. Second, Denver wanted to protect residents' rights to due process and freedom from unreasonable searches and seizures. Third, Denver invoked the Tenth Amendment's anti-commandeering principle. Fourth, Denver sought to encourage its undocumented residents to feel safe to access public programs, attend school, report crimes, and participate in the legal system. Finally, fifth, Denver invoked the legacy of community trust and collaboration in its police, sheriff, and fire departments. *Id.* at 1–3 (preamble). The same day the Ordinance was enacted, Mayor Michael Hancock issued Executive Order No. 142, citing many of the same policy goals. *See id.* at 4–6 (Executive Order).[2]

The Ordinance accomplishes these goals in four ways: (1) restrict the use of Denver's funds and resources to participate in federal civil immigration enforcement (Section 28-250); (2) restrict Denver's ability to contract to assist in federal civil immigration enforcement (Section 28-251);

---

[2] Likewise, the Court can take judicial notice of executive orders. *Peoples v. Long*, No. 1:20-cv-02116-RBJ-NYW, 2020 WL 9076288, at *9 (D. Colo. Dec. 16, 2020).

(3) limit federal immigration authorities' access to Denver jails (Section 28-252); and (4) provide federal immigration authorities the same access as the general public to residents' personal information (Section 28-253).

**Section 28-250.** This section prohibits Denver personnel from "us[ing] any city funds or resources to assist in the enforcement of federal immigration laws," including assisting with civil immigration investigations, detentions, or arrests; requesting or sharing information about someone's national origin, immigration or citizenship status (except as required by federal law); and initiating a law enforcement contact "solely for purposes of determining the person's national origin, immigration or citizenship status." *Id.* at (a)(1)–(5). City personnel, however, may assist federal immigration authorities in executing a federal judicial warrant, keeping the peace, protecting public safety, enforcing criminal laws, and may contract with the federal government to transport federal detainees through Denver International Airport. *Id.* at (b)–(d).

**Section 28-251.** This section prohibits Denver personnel from contracting to "directly or indirectly assist in the enforcement of federal

immigration laws" or to collect or share personal information about someone's national origin, immigration or citizenship status (except as required by federal law). *Id.*

**Section 28-252.** This section prohibits Denver personnel from allowing federal immigration authorities without a federal judicial warrant to access secure areas of any Denver jails "for the purpose of conducting investigative interviews or any other purpose related to the enforcement of federal immigration laws." *Id.* at (a). This section makes clear, however, that Denver personnel may coordinate telephone or video interviews between federal immigration authorities and detainees if the detainee has first been advised about the interview's purpose and her legal rights. *Id.* at (b).

**Section 28-253.** This section prohibits Denver law enforcement from detaining anyone based on a civil immigration detainer and from sharing personal information with federal immigration authorities based on an administrative warrant. *Id.* at (c). But it makes clear that when federal immigration authorities request it, City personnel may provide a detainee's release date if the detainee is promptly advised about the request and her

legal rights (and advised again on the detainee's release date). *Id.* at (d). The Denver Sheriff Department must maintain records of all such requests and provide quarterly reports to the City Council and the Mayor. *Id.* at (e)–(f).

**Executive Order No. 142.** Relevant here, the Executive Order simply directs the City Attorney to train City employees to comply with the Ordinance (*id.* at 9, ¶ 18.0), instructs department heads to report federal attempts to use Denver resources to enforce civil immigration laws (*id.* ¶ 19.0) and informs all City personnel that compliance with the Executive Order is mandatory (*id.* ¶ 20.0).

Together, these laws reflect Denver's commitment to ensuring the judicious and efficient use of City resources, as well as Denver's commitment to prioritizing the safety and wellbeing of its residents.

## III. Plaintiff seeks to conscript Denver into helping the current federal administration achieve its political objectives for immigration enforcement.

Plaintiff alleges, among other things, the Ordinance violates the Supremacy Clause and seeks an order enjoining its enforcement. *See* App. at

38–39. This lawsuit is a direct attempt by the Administration to subvert local governance to further the Administration's political objectives.

Aside from Denver, Plaintiff has sued Chicago and Illinois (*United States v. Illinois*, 796 F. Supp. 3d 494 (N.D. Ill. 2025)), New York City (*United States v. City of New York*, 1:25-cv-4084 (E.D.N.Y.)), New York (*United States v. New York*, 810 F. Supp. 3d 329 (N.D.N.Y. 2025)), *United States v. New York*, 814 F. Supp. 3d 266 (N.D.N.Y. 2025)), Boston (*United States v. City of Boston*, 833 F. Supp. 3d 30 (D. Mass. 2026)), Los Angeles (*United States v. City of Los Angeles*, 835 F. Supp. 3d 1147, (C.D. Cal. 2026)), Newark, Jersey City, Paterson, and Hoboken (*United States v. City of Newark*, No. 25cv5081 (EP) (AME), 2026 WL 1816022 (D.N.J. June 24, 2026) and *United States v. New Jersey*, No. 26-1770 (GC) (JTQ) (D.N.J. Sept. 4, 2026)), and Rochester (*United States v. City of Rochester*, 25-cv-06226-FPG-MJP (W.D.N.Y.)).

Because the cities and state have similar laws, the complaints are essentially the same. And all have been dismissed. As the district court found, federal attempts to conscript state and local governments do not pass muster under the Tenth Amendment. The Court should affirm.

## SUMMARY OF THE ARGUMENT

Because the INA is voluntary, the district court was right to conclude that any holding for Plaintiff would violate the Tenth Amendment. It was also correct to adopt the preemption analyses in *United States v. Illinois*, 796 F. Supp. 3d 494 (N.D. Ill. 2025) and *United States v. New York*, 810 F. Supp. 3d 329 (N.D.N.Y. 2025) because the laws in those cases are the same as the Ordinance. And though Plaintiff faults the district court for various errors, not once does Plaintiff contend it should win on the merits. Instead, it largely shifts its focus to waived arguments not raised below. The Court should affirm.

## ARGUMENT

Denver first explains why the district court correctly found that any holding for Plaintiff would violate the Tenth Amendment. Denver then turns to Plaintiff's preemption arguments and concludes with intergovernmental immunity. Plaintiff's arguments on each point lack merit. The Court should affirm.

## I. Because the federal government cannot force cities to carry out federal programs, the district court correctly determined a ruling for Plaintiff would violate the Tenth Amendment.

As the district court correctly concluded, any ruling in Plaintiff's favor would conflict with the Tenth Amendment. Under the Tenth Amendment, all "powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." U.S. Const. Amend. X. The Supreme Court has observed "conspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018). Because Denver's laws are consistent with the well-established principle that local governments can't be compelled to implement federal regulatory programs, any ruling to the contrary would violate the anti-commandeering doctrine. *See Printz v. United States*, 521 U.S. 898, 925 (1997).

### A. Invalidating the Ordinance would effectively compel Denver to enforce federal immigration.

Plaintiff superficially acknowledges the anti-commandeering doctrine but nonetheless contends it can compel Denver to use its resources to further

the federal immigration scheme. Plaintiff's mischaracterization of the effect of Denver's laws betrays its unconstitutional intent. Plaintiff suggests it can force Denver to "facilitate" transfer of inmates into federal custody. It cannot.

Plaintiff further implies that by declining "requests" to assist with federal immigration enforcement, Denver is obstructing that enforcement. But it's a fundamental principle that the federal government cannot conscript local governments into carrying out federal programs. It's well within Denver's rights–-and the rights of any municipality—to choose not to assist the federal government in immigration enforcement. *See Printz*, 521 U.S. at 925.

And as the district court similarly noted, "it is clearly established that Congress does not have the power to dictate the allocation of state resources, such as by compelling states to bear the cost of enforcing a federal regulatory program." App. at 223; *New York v. United States*, 505 U.S. 144, 158 (1992). In short, the anti-commandeering doctrine prohibits the federal government from "directly compelling" local governments "to enact and enforce a

federal regulatory program." *New York v. United States*, 505 U.S. 144, 161 (1992) (quotation marks omitted).

Invalidating Denver's challenged laws would have the effect of compelling local enforcement of the INA. Plaintiff argues its position comports with the anti-commandeering doctrine because it doesn't "seek to require Denver . . . to regulate in a particular area by enacting or repealing particular law . . . ." Br. for Appellant (Br.) at 24. But Plaintiff seeks to have Denver's challenged laws declared invalid, which has the same effect as repealing those laws. In short, Plaintiff seeks to "unequivocally dictate[] what a [city] legislature may and may not do," despite *Murphy's* explicit ruling to the contrary. 584 U.S. at 890.

### B. The Ordinance doesn't obstruct federal immigration enforcement.

Because invalidating Denver's laws would constitute commandeering, Plaintiff contends the Ordinance obstructs its immigration enforcement efforts. Plaintiff disclaims any intent to require Denver to *enforce* the INA. But this argument can't be harmonized with the text of the challenged laws. Nothing in the Ordinance impedes federal immigration enforcement. In fact,

Denver's provisions explicitly direct compliance with federal immigration laws. *See* D.R.M.C. §§ 28-250(b), -252(a); Executive Order 142-18.0. Plaintiff's argument boils down to a single, unconstitutional theory: anything short of affirmative assistance with federal immigration enforcement constitutes obstruction. The district court correctly rejected this suggestion and found that a ruling for Plaintiff would necessarily violate the Tenth Amendment.

Plaintiff observes that Congress can require certain kinds of state participation as a condition of voluntary participation in a federal program, referred to as "cooperative federalism" programs. *Murphy*, 584 U.S. at 476. But no such voluntary federal program is at issue here. Plaintiff appears to conflate the voluntary nature of cooperation with immigration detainers and administrative warrants with federal laws which "*allowed* but did not *require* the States to implement a federal program." *Id.* (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 288 (1981)). Invalidating the Ordinance would make mandatory what is currently voluntary.

The district court did not suggest that any federal law which requires the use of local government resources automatically violates the anti-

commandeering doctrine. Instead, the district court correctly observed that mandating Denver expend resources to implement the federal regulatory program at issue here—the INA—would violate the anti-commandeering doctrine. App. at 236–37.

Plaintiff cites *Reno v. Condon* for the proposition that a local government choosing to engage in certain action can be required to take additional steps to comply with federal standards regulating that action. 528 U.S. 141, 150 (2000). But the federal provision at issue in *Reno* presented no commandeering problem because it did "not require state officials to assist in the enforcement of federal statutes regulating private individuals." *Id.* at 151. Instead, *Reno* involved the Driver's Privacy Protection Act, which constitutionally regulated states as the owners of databases containing drivers' personal information. *Id.*

That is not the scenario here. Plaintiff seeks to override Denver's right not to assist in federal immigration enforcement and instead compel Denver to nonetheless expend resources in furtherance of the federal immigration enforcement.

Plaintiff's reference to the so-called "tip-off provision" in the Ordinance is similarly inadequate to avoid the conclusion of an anti-commandeering doctrine violation. The provision says when ICE asks about an inmate's release date (a non-mandatory request), the Sheriff Department may respond to such request, and the subject inmate shall be advised of the request and certain legal rights. D.R.M.C. § 28-253(d).

Plaintiff argues that, because Denver must already be expending resources in enforcing that provision, invalidating it wouldn't conscript Denver into expending resources on a federal program. This misunderstands the broader principle of the anti-commandeering doctrine: the federal government can't tell municipalities how to use their resources.

The federal government does have the ability to limit action of local officials where local laws are preempted by federal law. *Murphy*, 584 U.S. at 477. But this isn't the case with Denver's laws. *See infra* Section III. Accordingly, as the district court correctly concluded, Plaintiff cannot conscript Denver into taking action (or inaction) to facilitate and assist with federal immigration enforcement.

Plaintiff goes even further to suggest that upholding the anti-commandeering doctrine under these circumstances would "render unconstitutional many federal statutes." But Plaintiff's example doesn't hold up under scrutiny. 8 U.S.C. § 1324(a)(1)(A)(iii) criminalizes harboring undocumented immigrants, including by "alert[ing] undocumented immigrants to the physical approach of immigration authorities."[3] Contrary to Plaintiff's contention, prosecuting a local government employee who violates the provision wouldn't constitute commandeering because the statute doesn't conscript local governments into expending resources to assist federal immigration enforcement.

The effect of the Ordinance on prisoner transfers reflects a similarly constitutional local government decision to not assist in federal immigration enforcement. *See* D.R.M.C. § 28-253. Denver is choosing not to comply with voluntary requests.

---

[3] For discussion about why the Ordinance doesn't violate § 1324(a)(1)(A)(iii), *see infra* Section II.

Plaintiff falls back again to the argument that anything short of affirmative participation is equivalent to obstruction of federal immigration enforcement. But Plaintiff cannot explain how Denver's laws, which prohibit ICE from accessing secure areas of Denver jails without a federal judicial warrant and prohibit Denver law enforcement from detaining persons based on civil immigration detainers, impede federal immigration enforcement. These laws simply opt out of agreeing to voluntary requests and treat federal immigration officials like any other law enforcement agency.

Similarly unavailing are Plaintiff's arguments as to its express preemption theory. Plaintiff first posits that because the district court did not, in its view, dedicate adequate space to its adoption of the Northern District of Illinois' opinion in *United States v. Illinois*, 796 F. Supp. 3d 494 (N.D. Ill. 2025), the district court's conclusions cannot be credited. But it's clear that Denver's laws are not expressly preempted.

Express preemption requires Congress to "define explicitly the extent to which its enactments pre-empt state law." *Choate v. Champion Home Builders Co.*, 222 F.3d 788, 792 (10th Cir. 2000). 8 U.S.C. §§ 1373(a) and 1644

undoubtedly are part of the federal government's immigration enforcement scheme. But neither of these provisions can be read as regulating private actors.

Plaintiff cannot avoid this conclusion by arguing that §§ 1373 and 1644 are part of a regulatory scheme which has other provisions regulating private actors. Plaintiff's citation to *New York v. United States Department of Justice* suggests the Second Circuit reached a different conclusion; the Second Circuit declined to decide the preemptive effect of § 1373 and merely acknowledged that "§ 1373 is one provision of a larger statute, the INA, which certainly confers rights and places restrictions on large numbers of private persons." 951 F.3d 84, 114 n.27 (2d Cir. 2020).

Each court that has assessed the preemptive effect of §§ 1373 and 1644 has rejected Plaintiff's argument. *County of Ocean*, 475 F. Supp. 3d at 372; *see also Colorado v. U. S. Dep't of Just.*, 455 F. Supp. 3d 1034, 1059 (D. Colo. 2020) ("By their plain terms, [§§ 1373 and 1644] affect state and local government entities and officials; they do not regulate private actors as *Murphy* requires for preemption."); *Illinois*, 796 F. Supp. 3d at 520 ("As a provision that

addresses information sharing between government actors, § 1373 doesn't create or restrict the rights of any private actor"); *Oregon v. Trump*, 406 F. Supp. 3d 940, 972 (D. Or. 2019) ("In particular, the provisions create no rights or restrictions applicable to private actors; rather, by their terms, Sections 1373 and 1644 affect only state and local government 'entit[ies]' and 'official[s].'"); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 329 (E.D. Pa. 2018) (Section 1373 "can[not] be best read as regulating private actors" because it instead "regulate[s] state and local government entities and officials").

**C. Invalidating the Ordinance would compel Denver to do more than simply share information with the federal government.**

Plaintiff's further argument based on the Second Circuit's ruling in *City of New York* likewise misses the mark. At the outset, *Murphy* calls into doubt the holding in *City of New York*. *New York v. Dep't of Just.*, 343 F. Supp. 3d 213, 234 (S.D.N.Y. 2018) (holding "cannot survive the Supreme Court's decision in *Murphy*."); *New York v. Dep't of Just.*, 951 F.3d 84, 113 ("*Murphy* may well have clarified that prohibitions as well as mandates can manifest impermissible commandeering.").

Even if the Second Circuit's conclusion as to the facial validity of § 1373 were both still good law and binding on this Court, this does not render the federal government's effort to conscript Denver into taking action to assist enforcement of the section permissible under the anti-commandeering doctrine. Nor would invalidation of Denver's laws simply require information sharing with the federal government. Instead, it would demand action in response to non-mandatory requests by federal immigration enforcement. That is precisely the kind of "forced participation . . . in the actual administration of a federal program" which *Printz* found violative of the Tenth Amendment. 521 U.S. at 918.

As the district court recognized, in choosing not to assist federal immigration enforcement, Denver has exercised the rights secured to it under the Tenth Amendment. Plaintiff argues the district court's Tenth Amendment analysis is flawed. But the position Plaintiff advances would violate the anti-commandeering doctrine by conscripting Denver into carrying out federal immigration enforcement.

## II. **Because the laws in *Illinois* and *New York* prohibit local governments from assisting with immigration enforcement by sharing information, executing contracts, or accepting administrative warrants and immigration detainers—just like the Ordinance—the analyses in those cases apply here.**

Because the Ordinance overlaps with the laws in *United States v. Illinois,* 796 F. Supp. 3d 494 (N.D. Ill. 2025) and *United States v. New York,* 810 F. Supp 3d 329 (N.D.N.Y. 2025), the district court was right to adopt their analysis.

To illustrate, the laws in all three cases prohibit using government resources to assist with federal immigration enforcement including by sharing information on citizenship status. *Illinois,* 796 F. Supp. 3d at 532; *New York,* 810 F. Supp 3d at 337, 349; D.R.M.C. § 28-250. They also don't let ICE access local jails without a judicial warrant. *Illinois,* 796 F. Supp. 3d at 515; *New York*, 810 F. Supp. 3d. at 337; D.R.M.C. § 28-252. The laws in *Illinois* and Denver prohibit local governments from contracting with the federal government to assist with federal immigration enforcement. *Illinois,* 796 F. Supp. 3d at 515; D.R.M.C. § 28-251. And they prevent local law enforcement from detaining individuals based on civil immigration detainers and from

sharing citizenship information based on administrative warrants. *Illinois,* 796 F. Supp. 3d at 506; D.R.M.C. § 28-253. Because the Ordinance's requirements were analyzed in *Illinois* and *New York*, the district court was right to adopt the reasoning in those orders.

Plaintiff appears to concede this and targets subsection 28-253(d), which is the lone provision in the Ordinance that isn't in *Illinois* or *New York*. As discussed above, *supra* Section I.B, it requires that jail deputies inform inmates when ICE agents ask about their release date and then explain the inmates' legal rights. D.R.M.C. § 28-253(d). Though absent from *Illinois* and *New York*, because the same preemption principles govern the analysis, the district court properly relied on those principles to dismiss the preemption claims against the subsection.

That is, because the subsection does not conflict with the INA, regulate Plaintiff or discriminate against Plaintiff,[4] the district court properly applied the rationale in the *Illinois* and *New York* orders to dismiss the claims against the subsection.

---

[4] For a more robust analysis, see discussion *infra* Section III and IV.

Plaintiff next contends the subsection shows that Denver is unlawfully harboring undocumented residents under 8 U.S.C. § 1324(a)(1)(A)(iii). The argument is unsound.

Section 1324(a)(1)(A)(iii) makes it a crime to knowingly harbor or attempt to harbor undocumented aliens. "To 'harbor' under § 1324, a defendant must engage in conduct that is intended both to substantially help an unlawfully present alien remain in the United States—such as by providing him with shelter, money, or other material comfort—and also is intended to help prevent the detection of the alien by the authorities." *United States v. Vargas-Cordon*, 733 F.3d 366, 382 (2d Cir. 2013). It is to materially "assist an alien to remain illegally in the United States without publicly advertising his presence but without needing or bothering to conceal it . . . ." *United States v. Costello*, 666 F.3d 1040, 1047 (7th Cir. 2012).

An example is when "defendants had taken clear steps to prevent the detection of the unlawfully present aliens who worked in their brothel, including the installment of a video surveillance and alarm system designed to alert their employees whenever immigration officials approached the

building." *Vargas-Cordon*, 733 F.3d at 380 (citing *United States v. Herrera*, 584 F.2d 1137, 1141–42 (2d Cir. 1978).

To suggest that notifying inmates ICE has asked about their release date and then explaining the inmates' legal rights substantially helps the inmates remain in the United States and is meant to prevent ICE from finding them is a difficult position to maintain. Because Denver provides ICE with the release date, agents can wait at the jailhouse doors when the inmates are released.

In any event, because the laws and reasoning in *Illinois* and *New York* apply here, the district court properly adopted the analysis in those cases.

## III. The INA does not preempt the Ordinance because the provisions relevant here don't regulate private actors, it's possible to comply with both the Ordinance and the INA, and the Ordinance doesn't frustrate the INA's purpose.

Plaintiff contends the INA preempts the Ordinance through express and conflict preemption. Br. 34, 35. Plaintiff is wrong. When "Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal

law; . . . the federal law takes precedence and the state law is preempted." *Murphy v. Nat'l Collegiate Athletic Ass'n,* 584 U.S. 453, 477 (2018).

A local law is conflict preempted when (1) it is physically impossible to comply with both the local and federal laws or (2) the local law is an obstacle to the federal law because it stops the federal law from fulfilling its purpose. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 98 (1992) (first quoting *Fla. Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43 (1963); then quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

And it is expressly preempted when Congress enacts "a statute containing an express preemption provision" that shows an intent to preempt local law. *Arizona v. United States,* 567 U.S. 387, 399 (2012).

Here, the district court, through the reasoning in *New York* and *Illinois*, correctly concluded the INA does not preempt the Ordinance because it complies with the INA, it does not conflict with the INA, and the provisions Plaintiff points to for express preemption do not regulate private actors. Each is discussed in turn.

### A. Because it's possible to comply with both federal and local law and the Ordinance does not frustrate the INA's purpose, it is not conflict preempted.

The Ordinance is conflict preempted if (1) it is physically impossible to comply with it and the INA or (2) it is obstacle to the INA's objective. *Fla. Lime,* 373 U.S. at 142–43; *Hines,* 312 U.S. at 67. The Ordinance passes both tests with ease.

#### 1. Because the Ordinance requires Denver to comply with federal law, it is possible to comply with both it and the INA.

Because the Ordinance explicitly requires compliance with federal law, it is possible—and mandatory—to comply with both the Ordinance and the INA. D.R.M.C. §§ 28-250(a)(4), -252(a). The Ordinance also makes clear that if ICE agents present judicial warrants—instead of administrative warrants and detainers—deputies must comply. *Id.* §§ 28-250(b), -252(a). The Executive Order likewise sets forth procedures to "[e]nsur[e] compliance with . . . applicable federal law . . . or regulation." *See* Executive Order 142-18.0.

And as discussed, *supra* Section I.B, the INA expressly states that local assistance is voluntary. *See, e.g.*, 8 C.F.R. 287.7(a); *United States v. Illinois*, 796 F. Supp. 3d 494, 530 n.18 (N.D. Ill. 2025). In short, because Denver is empowered to decide if it wishes to assist with immigration enforcement and the Ordinance requires Denver to comply with federal law, it is possible to comply with the Ordinance and the INA. The Ordinance passes test one.

**2. Because the Ordinance is not an obstacle to the INA's objectives, it is not conflict preempted.**

Plaintiff next contends the Ordinance stands as an obstacle to the INA's goals because it requires Denver employees to inform inmates of their rights and tell them when ICE agents have asked about their release date. Br. at 34. According to Plaintiff, because "Congress contemplated a seamless transfer of custody to federal immigration officials at the end of any state or local criminal sentence[,]" the requirement frustrates the INA's purpose. *Id.* Again, Plaintiff is mistaken.

First, Congress has not contemplated a seamless transfer of custody. To support the assertion, Plaintiff cites to 8 U.S.C. §§ 1226(c)(3) and 1231(a)(1)(A)–(B). Neither contemplate transfer.

Section 1226(c)(3) says "[t]he Secretary of Homeland Security shall issue a detainer for an alien described in paragraph (1)(E) and, if the alien is not otherwise detained by Federal, State, or local officials, shall effectively and expeditiously take custody of the alien." And § 1231(a)(1)(A) says "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days . . . ." Subsection (B) defines the removal period. *Id.* § (B)(i)–(iii).

Nothing in those provisions mention transferring inmates from local to federal custody. *Illinois*, 796 F. Supp. 3d at 530 (confirming as much). And even if they did, the Ordinance would not frustrate them. As previously discussed, *supra* Section II, informing inmates ICE has asked about their release date and then educating them about their legal rights has nothing to do with the INA, nor does it prevent ICE from taking individuals into custody. Plaintiff's argument is threadbare and meritless.

Second, though Plaintiff does not assert any other conflict-preemption arguments,[5] the district court, through *Illinois* and *New York*, correctly determined the Ordinance is not an obstacle to the INA because immigration detainers are voluntary and don't require local governments "to take any action in response to one," *Illinois*, 796 F. Supp. 3d at 528; *United States v. New York*, 810 F. Supp. 3d 329, 351 n.11 (N.D.N.Y. 2025).

Based on the same voluntary reasoning, the district court concluded the Ordinance's restrictions on sharing citizenship information and immigration contracts also don't undermine the INA. *Illinois*, 796 F. Supp. 3d at 530. And as discussed above, *supra* Section I.B, any holding to the contrary would upend the Tenth Amendment. App. at 236; *New York*, 810 F. Supp. 3d at 351; *Illinois*, 796 F. Supp. 3d at 531. The Ordinance passes test two. There is no conflict preemption.

[5] Because Plaintiff's argument is limited to the detention and transfer of aliens, challenges to other parts of the Ordinance are waived. *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived.").

**B. Because 8 U.S.C. §§ 1373(a) and 1644 don't regulate private actors and interpreting them otherwise would violate the Tenth Amendment, they do not expressly preempt the Ordinance.**

As noted, preemption only applies to federal laws that regulate private actors. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 479 (2018). "To determine whether a federal law regulates private actors, courts must 'look beyond the phrasing employed' and interrogate whether the law in substance affects the rights of private actors. *United States v. Illinois*, 796 F. Supp. 3d 494, 520 (N.D. Ill. 2025) (quoting *Murphy*, 584 U.S. at 478).

Here, Plaintiff argues the Ordinance is preempted by two INA provisions: 8 U.S.C. §§ 1373(a) and 1644. They provide:

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

8 U.S.C. § 1373(a); 8 U.S.C. § 1644 ("[N]o State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States.").

Because the Ordinance prevents Denver and its employees from sharing information about citizenship status, D.R.M.C. §§ 28-250 -251, -253, Plaintiff contends §§ 1373(a) and 1644 expressly preempt those parts of the Ordinance. Br. at 29, 31–32.

They do not. First, §§ 1373(a) and 1644 don't regulate private individuals. The language is directed at government entities and government officials, not private actors. And while it affects what information government employees can share, it doesn't affect their constitutional rights. *Murphy*, 584 U.S. at 455.

Second, even looking beyond the text, the provisions do not affect the rights of private actors. Government employees sharing information on immigration status doesn't implicate private rights. *Illinois*, 796 F. Supp. 3d at 521 (collecting cases).

For example, if Denver shared citizenship information with ICE that eventually led to a deportation, it wouldn't mean the Ordinance conferred rights on a private actor. *Murphy*, 584 U.S. at 455. After all, undocumented aliens don't have a constitutional right to reside in the United States.

And as discussed above, *supra* Section I.B, adopting Plaintiff's interpretation would likely result in commandeering. *Illinois*, 796 F. Supp. 3d at 522 ("In short, there is no way to read § 1373 as regulating anyone other than States and their political subdivisions. This not only nullifies § 1373 as a preemption provision but also evokes significant anticommandeering concerns.); *United States v. New York*, 810 F. Supp. 3d 329, 349–50 (N.D.N.Y. 2025); *see also Arizona v. United States*, 567 U.S. 387, 415 (2012) explaining that, when possible, statutes should "be construed in such a way as to avoid doubtful constitutional questions").

Perhaps recognizing this outcome, Plaintiff asks the Court to find otherwise because other provisions in the INA regulate private actors. Br. at 30. But as the district court found, through the *Illinois* order, the other provisions are not relevant. *Illinois*, 796 F. Supp. 3d at 521–22. Because Plaintiff chose to challenge §§ 1373(a) and 1644, those are the provisions Court must analyze. And because they exclusively regulate government actors, they have no preemptive effect. Plaintiff's argument fails. The Court should affirm.

## IV. Because the Ordinance does not discriminate against or regulate the federal government, Plaintiff's intergovernmental immunity claims lack merit.

Plaintiff finally contends the Ordinance undermines intergovernmental immunity because it discriminates against the United States and regulates it. Denver first discusses discrimination, then regulation.

### A. Because the Ordinance applies only to Denver and does not treat Plaintiff worse than others, it does not discriminate against the federal government.

The Ordinance unlawfully discriminates against Plaintiff only if it singled out the federal government for "less favorable treatment" or regulated it "unfavorably on some other basis related to [its] governmental status." *United States v. Washington,* 596 U.S. 832, 839 (2022) (internal quotation marks omitted). A law does not discriminate against the federal government unless it provides another entity or individual with preferential treatment. *McHenry County v. Kwame Raoul,* 44 F.4th 581, 595 (7th Cir. 2022) ("Differential treatment is critical to a discrimination-based intergovernmental immunity claim."); *Illinois,* 796 F. Supp. 3d at 533.

Thus, a comparator is necessary. "[T]he mere fact that the [local law] touches on an exclusively federal sphere is not enough to establish discrimination." *New York,* 810 F. Supp 3d at 353 (quoting *McHenry County,* 44 F.4th at 594).

Here, Plaintiff targets the Ordinance's restriction on sharing citizenship information and the requirement that jail employees notify inmates when ICE has asked about them. Br. at 39. Those requirements do not discriminate against Plaintiff because the information restriction applies equally to all "enforcement of federal immigration laws." D.R.M.C. § 28-250(a). And informing inmates ICE has asked about them doesn't apply to the federal government at all. *Id.* § 252(b).

Thus, it's no surprise Plaintiff cannot identify any state or local government entity that may be entitled to the information and access the Ordinance restricts. That failure defeats the claim. *New York,* 810 F. Supp 3d at 353; *Illinois,* 796 F. Supp. 3d at 533. The Court should affirm.

**B. Because Plaintiff does not argue Denver unlawfully regulates it, the argument is waived. Even so, the Court should affirm because the Ordinance regulates Denver, not the federal government.**

To begin with, Plaintiff does not argue the Ordinance unlawfully regulates it. *See* Br. at 38–41 (discussing only discrimination). Accordingly, the argument is waived. *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived.").

Even if Plaintiff had argued unlawful regulation, the argument would still fail because the Ordinance regulates Denver employees, not the federal government. To constitute regulation, the Ordinance must "place[] a prohibition on the Federal Government," *McHenry County*, 44 F.4th at 592, "constrain[] the conduct of federal agents and employees," *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010), or "improperly 'control' [federal] employee[s'] federal duties," *Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 206 (5th Cir. 2024).

The Ordinance does none of those things. It controls the conduct of Denver's own personnel, not Plaintiff's. Section 28-250 prohibits City

employees from using City funds or resources to help enforce federal civil immigration law. Section 28-251 bars City personnel from entering contracts to assist with civil immigration enforcement or to collect or share personal information. Section 28-252 prevents City personnel from allowing federal immigration authorities to access secure areas of Denver jails but does not prohibit City personnel from coordinating telephone or video interviews between detainees and federal immigration authorities. And section 28-253 prohibits City law enforcement from detaining people based on immigration detainers and from sharing personal information based on administrative warrants; it also requires City law enforcement to make certain notifications and create certain records.

All these rules "dictate what local workers may and may not do"; they do not control Plaintiff in any way. *United States v. Illinois*, 796 F. Supp. 3d 494, 534–35 (N.D. Ill. 2025); *United States v. New York*, 810 F. Supp. 3d 329, 353–54 (N.D.N.Y. 2025); *see also United States v. New Jersey*, No. 20-cv-01364-FLW-TJB, 2021 WL 252270, at *13 (D.N.J. Jan. 26, 2021) (same); *McHenry County*, 44 F.4th at 592 (same).

Consequently, the Ordinance does not regulate the federal government—unlawfully or otherwise. The Court should affirm

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's order.

November 10, 2026.

Submitted,

*s/ Ashley Kelliher*
Ashley Kelliher
Sophia Fernald
Andres Alers
Denver City Attorney's Office
201 W. Colfax Ave., Dept. 1108
Denver, CO 80202-5332
ashley.kelliher@denvergov.org
robert.lyman@denvergov.org
sophia.fernald@denvergov.org
andres.alers@denvergov.org
*Counsel for Denver Appellees*

## ORAL ARGUMENT STATEMENT

Because this case raises complex preemption questions and important limitations on federal authority to command state and local governments to assist with immigration enforcement. Denver Appellees request oral argument.

## COMPLIANCE CERTIFICATE

1. This brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains **6,831** words.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word for Office 365 and 14-point Palatino Linotype font.

November 10, 2026

*s/ Ashley Kelliher*
Denver City Attorney's Office

## PRIVACY AND DIGITAL SUBMISSION CERTIFICATE

I certify that (1) all required privacy redactions have been made; (2) any paper copies submitted to the Court will be exact copies of the version filed electronically; and (3) the electronic submission was scanned for viruses and has none.

November 10, 2026

*s/ Ashley Kelliher*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of **DENVER APPELLEES' RESPONSE BRIEF** was served on all counsel of record via the Tenth Circuit Court of Appeals' CM/ECF system on November 10, 2026.

*s/ Michele Imes*
Denver City Attorney's Office